## FIELDS SEWERAGE CO. v. BISHOP et al.
### No. 10712.

Court of Civil Appeals of Texas. Dallas. June 14, 1930.

Rehearing Denied July 12, 1930.

Leake, Henry, Wozencraft & Frank, of Dallas, for appellant.

Crate Dalton, of Dallas, for appellees.

JONES, C. J.

Appellant, Fields Sewerage Company, a corporation, is permanently enjoined, by a judgment in a district court of Dallas county, from operating its sewerage disposal plant located a few miles northwest of the city of Dallas. The judgment resulted from the trial of a suit for the abatement of such plant as a nuisance, instituted by appellees, A. T. Bishop and ten other residents of Dallas county, Tex., who own property in the immediate vicinity of said plant. From this judgment appellant has duly prosecuted an appeal.

Appellees alleged that the operation of the sewerage plant constitutes a nuisance, and made specific allegations of fact upon which this charge is based. These allegations of fact were specifically denied by appellant in its answer, and it also affirmatively pleaded, in effect, that the injunctive relief prayed for by appellees would result in depriving a thickly populated suburb of the city of Dallas of sewerage facilities, and thereby inflict injury upon a much larger number of citizens than the number injuriously affected by the operation of the sewerage plant. The pleadings of appellant and appellees in reference to the matters above mentioned are full and complete, and are a sufficient basis for all of the issues submitted to the jury, as well as all of the contentions made by the parties on this appeal.

The undisputed evidence discloses that the United States Government in 1917 established what was known as Love Field as a place for governmental training in aviation, which was rapidly developed by the government as an aviation field and as a place for quartering soldiers in this class of service. After a survey by officers of the United States government, for the purpose of locating a suitable site for a sewerage disposal plant, the sewerage plant and the necessary mains connecting it with Love Field were constructed and the plant operated as a necessary means for the disposal of sewerage from Love Field. No complaint was urged against this undertaking of the government by any property owner affected by the establishment and operation of such plant, among whom at the time were some of the appellees. After the war had ended, the government disposed of its ownership of the aviation field and the sewerage plant, the latter being sold at a small price as salvage. The United States Army officer in charge of the construction of this sewerage plant informed some of the property owners that its establishment was only a war measure and that its use would end when the war was over; that it was in consideration of this promise that no objection to its construction was made. The aviation field and other adjacent lands passed into the ownership of a private investment and development company, and the development of the suburban addition of Love Field was the result. The sewerage plant was enlarged and improved by its present owners, and there are now about 300 connections, serving a population of approximately 1,500 people who now depend entirely on this plant for the disposal of sewerage. Complaint was not urged against the operation of the sewerage plant until approximately two years previous to the filing of this suit in 1928. This apparent acquiescence by the complaining property owners in the location of the sewerage plant and its operation, together with the fact that, during the time of such apparent acquiescence, very substantial sums of money were spent by appellant on the enlargement and improvement of the plant, were made the basis for a plea of estoppel by appellant. This plea is answered by appellees in allegations sufficient to excuse any laches on their part and such allegations are established by proof. Hence this issue will not herein be discussed.

The evidence as to appellees' allegations in reference to the plant not being of the character that modern sanitation de-

mands, that it is overloaded because of insufficient size properly to take care of the sewerage, and that it is improperly operated, is practically undisputed and disproves all of such allegations. The evidence on the other allegations of appellees, to the effect that, though properly constructed and operated, the sewerage disposal plant is a nuisance, is in sharp conflict. This conflict was passed upon by the jury in favor of appellees; the finding thereon is sustained by evidence and is binding on this court.

The findings of the jury on the special issues submitted, in the interest of brevity, are paraphrased as follows: (1) the operation of appellant's disposal plant causes offensive gases, fumes, or odors to be given off; (2) these gases, fumes, or odors are such as to be materially offensive, annoying and unpleasant to the senses of a person of ordinary sensibility; (3) these gases, fumes, or odors are such as to render enjoyment of life materially uncomfortable, in the vicinity adjacent thereto, of a person of ordinary sensibility; (4) these gases, fumes, or odors are such as materially to interfere with the proper or comfortable enjoyment of the property in the vicinity of the sewerage plant; (5) these gases, fumes, or odors are such as to materially work hurt to, or endanger the health of, persons of ordinary sensibility in the immediate vicinity of the sewerage plant; (6) these gases, fumes, or odors are such as materially work hurt, inconvenience, or damage to lands, tenements, and hereditaments of those living in said vicinity; (7) these gases, fumes, or odors are such as to make the places of citizens of ordinary sensibility of the community adjacent to said plant materially undesirable as places of residence; (8) the appellant now has available an adequate means of disposing of its sewerage without using said plant; (9) the maintenance or operation of the sewerage plant causes odors of such a disagreeable character as to produce real or material discomfort to persons of ordinary sensibility; (10) the maintenance of the sewerage disposal plant at the location at which it is maintained, under the facts shown by the evidence in this cause, is reasonable; (11) the sewerage disposal plant is properly constructed; (12) the sewerage disposal plant is properly operated; (13) the sewerage disposal plant is not overloaded.

The findings from to (1) to (9) inclusive are in response to appellees' pleadings, are supported by evidence and are adopted as the findings of this court; the findings from (10) to (13) inclusive are in response to appellant's defensive pleadings, are sustained by practically the undisputed evidence, and are adopted as the findings of this court.

There should be given a statement of the evidence on which issue No. 8 was submitted to the jury, and which sustains the finding thereon, that appellant now has available an adequate means of disposing of its sewerage without the use of its disposal plant. It shows that one J. S. Stephenson, for the purpose of giving sewerage facilities to two suburban additions he was developing (Bluff View Estates and Greenway Park), constructed a sewerage main from the Bluff View Estates addition, and a branch main to Greenway Park addition, to a connection with a sewerage main owned and operated by the city of Dallas. The connection with the sewerage main of the city of Dallas was affected under the terms of a written contract between Stephenson and said city, and its terms authorize Stephenson to make connection with appellant's main. The Stephenson main passes within 600 or 800 feet of appellant's sewerage disposal plant; it is further shown that connection with the Stephenson main by appellant is practicable and feasible. If such connection be made, then the sewerage from the Love Field addition, now disposed of by means of appellant's disposal plant, would be carried to the disposal plant of the city of Dallas and would thus obviate any necessity for the use of appellant's disposal plant. Appellant would be left in charge of the business of disposing of the sewerage it now disposes of by means of said plant. Stephenson, while on the witness stand and in open court, offered such connection with his main on payment to him of the sum of $17,500. It does not appear whether this sum is reasonable, or what the building of the short main, necessary for making this connection, would cost.

With the findings of the jury as a basis, the trial court entered judgment "permanently enjoining and restraining the said defendant, its officers and agents, from turning sewerage into the septic plant, using and operating the same, and from emptying sewerage into the stream or upon the ground in the vicinity of plaintiffs' property, and from blowing the same into the air and upon the filter bed or in any wise using the said disposal plant for reducing sewerage, and is directed to take such action and do such things within the scope of their power and authority, under the law, as may be necessary to accomplish these results, and the said defendant, its officers and agents, are hereby granted 90 days from the date hereof to fully comply with the orders of this court herein contained." The legal effect of this judgment is that, after the expiration of 90 days from its date, appellant is prohibited from using its disposal plant for any purpose for which it was constructed, and to destroy its business of disposing of sewerage in its disposal plant.

By appropriate assignments of error and propositions of law, appellant raises all of the issues herein discussed, and challenges the correctness of this judgment, under the findings of the jury and the undisputed facts.

415

The legal effect of the findings of the jury is that, notwithstanding the fact that the disposal plant is scientifically constructed, reasonably located for service in the section it is designed to serve, and scientifically operated, its operation is nevertheless a nuisance in respect to these plaintiffs and to others who reside and own property in the immediate vicinity. Brewster v. City of Forney (Tex. Com. App.) 223 S. W. 175, and authorities therein cited; City of Marlin v. Criswell et al. (Tex. Civ. App.) 293 S. W. 910. The question then is, Did the court err in entering the judgment of abatement, and in not remitting appellees to an action for damages?

If the effect of the judgment of abatement is to visit upon other citizens of Love Field, greater in number, injuries equal to or greater than a continued operation of the sewerage plant would visit upon appellees, then the judgment is erroneous and appellees should have been denied the specific relief sought; for it is elementary that a court of equity will not remedy a wrong committed against one class of persons by the commission of another wrong against a larger class. To state the question in the instant case more concretely: If the abatement of the nuisance, through the means of the injunctive powers of a court of equity, would result in depriving the other citizens of Love Field addition of the wholesome sanitation of a well-conducted sewerage system, then such relief should be denied appellees. The exercise of such power would be attended with the infliction of as great a wrong upon a much larger number of citizens. Under such a condition, appellees would be remitted to a suit for damages for compensation because of the injuries inflicted upon them. City of Wylie et al. v. Stone (Tex. Civ. App.) 16 S.W.(2d) 862; Rainey v. Red River, T. & S. Ry. Co., 99 Tex. 276, 89 S. W. 768, 90 S. W. 1096, 3 L. R. A. (N. S.) 590, 122 Am. St. Rep. 622, 13 Ann. Cas. 580; G., H. & S. A. R. Co. v. DeGroff, 102 Tex. 433, 118 S. W. 134, 21 L. R. A. (N. S.) 749; Sherman Gas, etc., Co. v. Belden, etc., 103 Tex. 59, 123 S. W. 119, 27 L. R. A. (N. S.) 237.

Appellant's main contention is based upon the rule of law above announced. This rule of law rests upon the theory that the rights and equities of all the parties affected by the granting of the relief by abatement of nuisances of this character must be balanced, and, if it is found that the greater number would suffer injury by the allowance of such relief than the number of those that would be benefited by granting it, then the minority must yield to the majority and relief by abatement be denied. Such, however, is not the instant case, for the judgment abating the nuisance is based on the theory that sewerage service will not thereby be disturbed. The interest of that larger class of citizens who are not damaged by reason of the existence of the nuisance is not affected by this judgment, provided its evident intent is carried out by appellant. The evidence on which the judgment is based is clear and undisputed, to the effect that connection with a sewerage main of the city of Dallas can be made by appellant at a cost apparently not prohibitory, by means of which full relief is granted to appellees and the sewerage service continued for the benefit of the other citizens of the Love Field community.

Instead of the judgment of abatement presenting a case of the balancing of the rights and equities of all the members of this community, it presents only a case calling for the balancing of the rights and equities existing between appellees and appellant. It is elementary that every citizen has the right to the enjoyment of his home without hurt or injury from any unlawful acts or conduct of his neighbor, and that no person has the right to make such use of his property as unlawfully works hurt or injury to his neighbor. Those cases in which a nuisance is permitted to exist, under the rule of balancing rights and equities of all parties at interest, are based on the stern rule of necessity rather than on the right of the author of the nuisance to use his property in such manner as to work a hurt or injury to his neighbor. Necessity of others compels the injured party to seek their relief by way of a suit at law for damages rather than by an action in equity to abate the nuisance.

It is always the duty of the court to consider the inconvenience and damage that will result to the defendant, as well as the benefit that will accrue to the plaintiff, in all cases where a writ of injunction is sought. Applying this rule to the instant case, it appears on the one hand that a relatively large number of persons will suffer serious damages, both in their property rights and in the enjoyment of their homes, unless the relief is granted; on the other hand, it appears that appellant will suffer damages in the cost of making connection with the Stephenson sewerage main and in material damages occasioned by the property loss incident to abandoning its sewerage disposal plant. The trial court necessarily considered that less damages would result to appellant by a discontinuance of the sewerage plant and making use of the Stephenson main, in the manner suggested, than would result to appellees by a continuance of the nuisance, and we cannot say, from the evidence before us, that the trial court was wrong in such conclusion.

We do not agree with the complaint that the judgment of the trial court is too indefinite. We are inclined, however, to the opinion that the judgment should be modified in order that it may conform to the views herein expressed. The judgment allows 90 days

before the operation of the injunction against the use of the sewerage plant. We shall modify this to the extent that, after the receipt of the mandate in this case by the trial court, appellant shall be allowed 90 days within which to make either a connection with the Stephenson main or a direct connection with a Dallas city main, provided either connection can be made at a cost not prohibitory in view of all the circumstances in the case; and if, after the expiration of such 90 days, appellant is unable to make such connection, after using due diligence to do so, it shall report to the trial court, and such court shall determine whether the injunction shall be finally allowed.

It is our opinion that all of the assignments of error should be overruled, and the judgment, as modified, be affirmed.

Affirmed.