M. B. BAKER ET AL V. ROBERT D. HENDERSON ET AL.

No. 7575. Decided April 23, 1941.
Rehearing overruled July 16, 1941.
(153 S. W., 2d Series, 465.)

*E. H. Smartt* and *Colemay Gay*, both of Austin, for plaintiffs in error.

The Court of Civil Appeals erred in holding that violations of setback restrictions in the locality were sufficiently numerous to constitute an abandonment of any general scheme of restrictions that might have existed in that neighborhood; and that the failure on the part of plaintiffs to object to violations of such restrictive provisions which did not injuriously affect them precluded them from enforcing the restrictive clause involved in this case. Plaster v. Stutzman, 8 S. W. (2d) 750; Green v. Gerner, 283 S. W. 216, 289 S. W. 999; Ward v. Prospect Manor Corp., 188 Wisc. 534, 206 N. W. 856, 46 A. L. R. 364.

*Ghent Sandeford, Felts, Wheeler & Wheeler,* all of Austin, for defendants in error.

Plaintiffs are not entitled to an injunctive relief because they failed to establish any actual or substantial injury, as the erection of the proposed residence will not damage the use or value of their property. Chisholm v. Adams, 71 Texas 678, 10 S. W. 336; Sanitary Appliance Co. v. French, 34 S. W. (2d) 673; Dellaughter v. Hargrove, 40 S. W. (2d) 253.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

This suit was brought by M. B. Baker and others as plaintiffs, and they will be so designated here. It was against R. D. Henderson and another. They will be referred to as defendants.

Henderson is the real defendant. The purpose of the suit was to obtain an injunction restraining defendants from erecting a residence on a part of Lot No. 23, Block 9, in what is known as Westfield A, an addition to the City of Austin. Lot No. 23 is located at the intersection of Bridal Path, a street 30 feet in width, with Forest Trail, a street 50 feet in width. It abuts 298.8 feet on Forest Trail and 189 on Bridal Path. Plaintiffs own two lots or parts of lots in Block 9, their property facing on Bridal Path. The Addition mentioned was laid out in 1925 and it appears there was a provision to the effect that lots could not be subdivided within five years.

Prior to September 28, 1937, Thomas H. Henderson owned all of Lot No. 23. On that date he conveyed the north 87.47 feet to defendant Robert D. Henderson, the part convyeed facing 87.47 feet on Forest Trail and 189 feet on Bridal Path. It was on this part of said Lot 23 that defendant proposed to erect his residence.

The trial court filed elaborate findings of fact. After finding that Thomas H. Henderson conveyed to Robert D. Henderson the north portion of Lot 23 containing the restrictions hereinafter set out, there were the following findings:

### 13.

"That prior to and at the time of the conveyance from Thomas H. Henderson to Robert David Henderson and Gladys Whitley Henderson, the said Thomas H. Henderson knew that the defendants, Robert David Henderson and wife, were purchasing same for the purpose of erecting a residence for their home thereon, and that notwithstanding the restriction in the deed of conveyance, the said Thomas H. Henderson specifically agreed that the defendants, Robert David Henderson and Gladys Whitley Henderson, might erect their said residence on said land conveyed to them at a distance of less than 75 feet from Bridal Path, and that he, the said Thomas H. Henderson, waived the restriction in the deed as to building closer than 75 feet to the property line fronting on any street adjoining said premises.

### 16.

"That the portion of Lot 23, Block 9, Westfield 'A' owned by the defendants, Robert David Henderson and Gladys Whitley Henderson on which they have begun to erect their residence

fronts and is fronting on Forest Trail in said Westfield 'A' and that the proposed residence will be set back more than 75 feet from the property line fronting on said Forest Trail.

### 17.

"That the residence proposed to be erected by the defendants on the portion of Lot 23, Block 9, Westfield 'A' owned by Robert David Henderson and Gladys Whitley Henderson will front and will be fronting on Forest Trail, and that said residence will be set back more than 75 feet from Forest Trail, and that the side of such residence will be 22 feet from Bridal Path.

### 18.

"That it will be impossible to erect the residence proposed by the defendants on the lot owned by Robert David Henderson and Gladys Whitley Henderson if they are required to erect said residence at a distance of 75 feet from both Forest Trail and Bridal Path, and that it will be impossible to erect any character of residence on said lot if required to set same back 75 feet from both Forest Trail and Bridal Path, and that said lot will be rendered valueless and worthless to the defendants, if they are prevented from erecting a residence thereon at a distance of less than 75 feet from Bridal Path.

### 19.

"That the value of the lot owned by the defendants, Robert David Henderson and Gladys Whitley Henderson, without the residence thereon is the sum of $1750.00, and that the defendants paid the value of $1,500.00 therefor; that there is not now and has never been any general scheme of restrictions in said Westfield 'A' as to building with respect to street lines.

### 27.

"That the alleged 75 foot restriction was never intended by the original owners and developers to apply to any of the corner lots in said Westfield 'A,' so as to prevent the purchasers from building thereon at a distance closer than 75 feet to one or both of the streets abutting said lots.

### 28.

"That the residence proposed to be erected by the defendants on the property of Robert David Henderson and Gladys Whit-

ley Henderson will comply with the alleged 75 foot restriction, because same is and will be set back more than 75 feet from Forest Trail, the street on which said residence will front, and on which said lot fronts. ·

### 30.

"That Robert David Henderson and wife Gladys Whitley Hendreson, purchased the said North part of Lot 23, Block 9 in good faith and in the good faith belief that they would be permitted to erect their residence thereon at a distance of more than 75 feet fronting on Forest Trail and at a less distance than 75 feet from Bridal Path, and that such belief was induced and caused by the plaintiffs and other property owners in Westfield 'A' who had erected and acquiesced in the erection of residences in said Westfield 'A' at a less distance than 75 feet from a street or streets in said Westfield 'A'."

Under the heading of Conclusions of Law the court made the following additional findings:

### 1.

"I conclude that there was never any general scheme or plan established in Westfield 'A' requiring residences to be set back 75 feet from the street on which the property abuts.

### 2.

"I conclude that there was never any general plan or scheme of restriction established in Westfield 'A' applying to corner lots requiring buildings to be set back 75 feet from each of the streets abutting said corner lots.

### 3.

"I conclude that the defendants have and are complying with the restriction contained in the deed from the original grantors and developers to Thomas H. Henderson and in the deed from Thomas H. Henderson to Robert David Henderson and Gladys Whitley Henderson by erecting their residence more than 75 feet from Forest Trail, the street on which the lot of defendants and the residence to be erected thereon fronts.

### 4.

"I conclude that the plaintiffs and each of them by acquiescing and permitting other residences on lots in Westfield 'A'

where the conveyances contain the same restrictions as are in the conveyances to defendants, have waived their rights, if any they ever had, to complain of the residence proposed to be erected by defendants on their lot, and that they are now estopped to complain of the erection by the defendants of the proposed residence on their lots.

### 5.

"I conclude that the restriction 'Any such building or any outbuildings erected thereon shall not be closer than 75 feet to the property line fronting on any street adjoining said premises,' appearing in many deeds of conveyance to lots in Westfield 'A' has been generally disregarded, ignored, violated and abrogated by the owners of property in Westfield 'A'."

The trial court denied the injunction, and that judgment was affirmed by the Court of Civil Appeals. 125 S. W. (2d) 660.

The opinion of the Court of Civil Appeals contains a full discussion of the reasons given for upholding the finding that the general scheme or plan had been abandoned, and for the further holding that the restrictions or covenants relied upon by plaintiffs could not be enforced.

There is no attack upon any of the foregoing findings as being without support in the evidence, except as may be shown by assignments hereinafter set out.

We conclude that the evidence is amply sufficient to support all findings of fact made by the trial court.

In application for writ of error there are two assignments which appear to question findings of fact made by the trial court. They are as follows:

"Third Assignment of Error.

"The Court of Civil Appeals erred in holding that violations of setback restrictions in Westfield 'A' were sufficiently numerous and flagrant to constitute an abandonment of any general scheme of restrictions that might have existed in Westfield 'A'.

"Fourth Assignment of Error.

"The Court of Civil Appeals erred in holding that failure

to object to violations of restrictive covenants which did not injuriously affect them precluded plaintiffs in error from enforcing the restrictive covenants involved in this case."

1 At the most, the third assignment merely goes to the sufficiency of the evidence, and we are without jurisdiction to review the matter.

The fourth assignment, even if well taken, can have no controlling effect upon the decision, as will more fully hereinafter appear.

Plaintiffs present two other assignments in their application, and they are as follows:

"First Assignment of Error.

"The Court of Civil Appeals erred in holding that violation of restrictive covenants affecting other property in Westfield 'A' prior to September 28, 1937, was material or relevant to this case, since the record shows that on that date Thomas H. Henderson conveyed the property involved in this case to Robert David Henderson by deed providing that no residence should be erected thereon 'closer than 75 feet to the property line fronting on any street adjoining said premises,' and the effect thereof was to create a valid and binding restriction regardless of prior violations of similar restrictions.

"Second Assignment of Eror.

"If prior violations of similar covenants were relevant of material; the Court of Civil Appeals erred in holding that the five houses on the three corner lots across from the Henderson lot 'violated this 75-foot restriction,' because it was an admitted fact that there was no uniform restriction affecting all lots and that the restrictions varied with different lots, and there was no showing that said three corner lots were subject to a 75-foot restriction."

We are of the opinion that the first assignment presents for decision plaintiffs' theory of the case as presented in this Court. Briefly, it may be said to be as follows:

That plaintiffs have not relied upon any general scheme or plan creating a 75-foot setback provision, but rely wholly upon the restriction in the deed to defendant Robert D. Hen-

derson of September 28, 1937; and they seek to enforce that restriction solely by virtue of the attempt on the part of the grantor to confer upon any and all owners of property in Westfield A the right to enforce same; and they do not attempt to assert such a right as incident to their own property.

In the application we find the following statements:

"Since this restrictive covenant, created on September 28, 1937, was valid, how could it possibly be affected by the fact that other setback provisions in Westfield A had been disregarded in the past? We recognize, of course, the rule that a general plan or scheme of restriction may be abrogated by widespread and flagrant violation, and the rule that by his failure to object to violations of similar covenants, one may be estopped to enforce such a covenant. But these propositions obviously have no bearing on this case, because the restriction was created on September 28, 1937, and the suit was filed about six weeks later. During that perior nothing had been done to detract from the validity of the restrictive covenant. * * *

"Admittedly, there was no general plan or scheme for a 75-foot setback in Westfield A. We did not plead it and did not attempt to prove it. We admitted in the trial court and in the Court of Civil Appeals that it did not exist. It was no part of our case, because a general scheme is useful in a restriction suit of this character only when the defendant's deed does not contain any restriction and the general scheme is used to engraft it upon his lot, or when other property owners in the addition are not specifically given the right to enjoin violations. A general scheme was not needed for either purpose here."

2 It is urged by defendants that plaintiffs relied in the trial court upon a general scheme or plan, and that as the case was tried upon that theory, they are not entitled to be heard in this Court upon another theory. While the pleadings of plaintiffs and the findings of the trial court strongly tend to show that plaintiffs did rely upon a general plan or scheme, we nevertheless think it appropriate to give due consideration to their contentions as presented here. As we construe the admissions above quoted, they mean to say that there was never a general scheme or plan affecting all lots in the Addition requiring a uniform setback of 75 feet, but that there was a setback provision affecting all lots, and that the distances

varied as evidenced by the particular provisions set forth in the respective deeds to purchasers. We therefore proceed to consider the particular provisions contained in the deed by Thomas H. Henderson to Robert D. Henderson of September 28, 1937, for the purpose of determining its meaning and the rights of plaintiffs thereunder.

The restriction is as follows:

"Any residence erected on the premises hereby conveyed shall be of original cost not less than $3500.00, and such building or any outbuilding erected thereon shall not be closer than 75 feet to the property line fronting on any street adjoining said premises."

The so-called covenant is as follows:

"The grantees in this conveyance accept same subject to all the foregoing restricitons and conditions, which it is agreed shall be deemed to be covenants running with the land, and the grantees for themselves, their heirs, legal representatives and assigns, covenants to and with the grantor, his heirs, legal representatives and assigns, covenants to and with the grantor, his heirs and legal representatives, that they will, and that their heirs, legal representatives, and assigns, shall forever faithfully observe all and each of the foregoing restrictions and conditions, whether or not they are repeated in subsequent conveyances of the above described property; and if the grantees, or any person or persons claiming under them, shall at any time violate or attempt to violate, or shall omit to perform or observe any of the forgeoing restrictions or conditions, then it shall be lawful for any person owning land in Westfield A to institute and prosecute appropriate proceedings at law or in equity against the grantees, or any person or persons claiming under them, for the wrong done or attempted, or the grantor herein, his heirs and representatives, without being however, compelled to do so may institute and prosecute such proceedings."

3  Laying aside the idea of a general plan, it is at once obvious that there is absolutely no reason to say that the restriction and covenant created by this conveyance were imposed upon defendants' lot for the benefit of plaintiffs' property. In Davis v. Skipper, 125 Texas 364, 83 S. W. (2d) 318, it was said:

"The existence of an 'easement' or 'equity' in a tract of land growing out of restrictive covenant as to use can hardly be conceived except in connection with another tract of land, which may be said to be the dominant estate and for which the easement or equity is created. In every case where parties seek to enforce a restrictive covenant the burden of proof is upon them to establish that the covenant was imposed on defendant's land for the benefit of land owned by them. It is also well settled that in the absence of proof that a restriction was imposed for the benefit of other land, it is construed as a personal covenant merely with the grantor. In many instances it is held that unless it is expressly shown in the conveyance itself that the restriction is imposed for the benefit of other land, or unless there is an obvious purpose to sell in accordance with a general plan, the covenant must be construed as merely a personal one."

Thomas H. Henderson, the grantor of Robert D. Henderson, owned no property in this Addition other than Lot No. 23. Plaintiffs acquired their lots from an entirely different source. They had purchased and built their residences before the deed to Robert D. Henderson was executed. They did not purchase in reliance upon the covenants in his deed, nor did same enter into the consideration which they paid for their property. There was no privity of contract between themselves and Thomas H. Henderson. The only possible relation their lots could have sustained to Lot No. 23 was by virtue of a general plan, and it has been found that none existed.

As there was no general plan or scheme, and as Thomas H. Henderson at the time of his deed owned no property in Westfield A except Lot No. 23, it necessarily follows that at the most the restriction in the deed in question created only a personal covenant in favor of Thomas H. Henderson as appurtenant to the balance of said Lot No. 23. Such is the uniform holding. Davis v. Skipper, supra; Toothaker v. Pleasant, 315 Mo. 1239, 288 S. W. 38; Coughlin v. Barker, 46 Mo. App. 54; Werner v. Graham, 181 Cal. 174, 183 Pac. 945; St. Patrick's Ass'n. v. Hale, 227 Mass. 175, 116 N. E. 407; McNichol v. Townsend, 73 N. J. Eq. 276, 67 Atl. 939; Berryman v. Hotel Savoy, 160 Cal. 559, 117 Pac. 677; Annotation, 21 A. L. R., pp. 1281, et seq.

In the case of Godley v. Weisman, 133 Minn. 1, 157 N. W. 711, 1 L. R. A. 1917 A 333, it was said:

"It may be conceded that where the owner of a lot subject to no building restrictions conveys it, and in the deed inserts restrictive covenants, those covenants cannot, in the absence of some general building scheme or plan, be regarded as inuring to the benefit of contiguous property previously conveyed by him, and prior grantees cannot enforce such covenants."

It follows therefore that plaintiffs had no rights incident to their own lots, but only such rights as may have been conferred on them by virtue of the language contained in the deed by Thomas H. Henderson to Robert D. Henderson. In other words, they had no right to enforce the restriction in question as an "easement" or "equity" appurtenant to their lots, but at the most only had the right to enforce such cause of action as Thomas H. Henderson may have conferred on them by virtue of the conveyance mentioned. They have expressly limited their claim to "the right given in the deed creating the restrictive covenant to all persons owning land in Westfield A to restrain such violation." There is good authority for the proposition that a grantor having a right to enforce a covenant which is personal to himself as to a tract of land owned by him cannot confer such right on a third person except by express assignment. However, we shall treat the case as if Thomas H. Henderson had made an assignment to each and every other property owner in Westfield A Addition, as plaintiffs appear to contend is true.

4 There are good reasons why plaintiffs cannot maintain their suit upon this theory. We think the trial court was amply justified in concluding that the restriction in question, under the law and the circumstances, was not intended to apply as regards Bridal Path. There are certain fundamental rules regarding application of restrictive covenants in conveyances. Some of these rules are as follows:

Restrictive clauses in instruments concerning real estate must be construed strictly, favoring the grantee and against the grantor, and all doubt should be resolved in favor of the free and unrestrictive use of the premises.

Being in derogation of the fee conveyed by the deed, if there be any ambiguity in the terms of the restrictions, or

substantial doubt of its meaning, the ambiguity and doubt should be resolved in favor of the free use of the land. Settegast v. Foley Bros., 114 Texas 452, 270 S. W. 1014; Ragland v. Overton, 44 S. W. (2d) 768, 771; Holliday v. Sphar, 262 Ky. 45, 89 S. W. (2d) 327; Thompson on Real Property, sec. 3361; 18 C. J., p. 387, and authorities under notes 19 and 20. In Ragland v. Overton, supra, the court quotes from Thompson on Real Property as follows:

"In this country real estate is an article of commerce. The uses to which it should be devoted are constantly changing as the business of the country increases, and as its new wants are developed. Hence, it is contrary to the well-recognized business policy of the country to tie up real estate where the fee is conveyed with restrictions and prohibitions as to its use; and, hence, in the construction of deeds containing restrictions and prohibitions as to the use of the property by a grantee, all doubts should, as a general rule, be resolved in favor of a free use of property and against restictions."

5  The language of the restriction in this instance is certainly ambiguous. There is a forecful argument to the effect that the 75 foot provision related only to the line of the street upon which the lot fronted. There are authorities which tend to support this conclusion. On the other hand, there is a strong argument supporting the proposition that the 75 foot setback was to be from the property line facing any street, and there are authorities tending to support this conclusion. The restriction in question can be given effect as to Forest Trail, but every circumstance creates doubt that it was intended to be applied to Bridal Path. This is especially true when we consider it as having originated with the deed of September 28, 1937. Lot 23 fronted on Forest Trial. The part sold off to Robert D. Henderson also fronted on Forest Trail. The restriction was undoubtedly created in favor of Thomas H. Henderson and the land retained by him. The part of the lot retained by him fronted on Forest Trail alone. It is reasonable to assume that any residence built thereon would face Forest Trail. Naturally the grantor would have been interested in requiring a residence built on the part sold to Robert D. Henderson to be built in line with the residence which might be built on the part retained; that is, 75 feet back from Forest Trail. The grantor would have but little concern as to residences which might be built fronting on Bridal Path. Fur-

thermore, a salesman for the original subdividers testified that when the restriction against subdividing the lots expired in 1930 it was considered that the building restrictions had been abandoned. Subdivision of the lots would have been practically useless if this were not true. It is shown that some four or five houses on lots fronting Bridal Path are built nearer the street line than 75 feet. It seems almost certain that the restrictive clause was placed in the deed by inadvertence. It was merely a repetition of a similar covenant in numerous deeds executed under the general scheme, and when that scheme was abandoned the language properly became meaningless as to Lot No. 23.

There is another reason which almost conclusively shows that this resrtiction was not intended to apply to Bridal Path. It appears well settled that restrictions which amount to a prohibition of use of the property granted are void. Thompson on Real Property, Section 3363; Jung v. Petermann, 194 S. W. 202. The trial court found that prior to the time Thomas H. Henderson sold to defendants he knew that defendants were purchasing the land for the purpose of erecting a residence thereon. It is further found that when defendants bought the lot they purchased same "in good faith, and in the good faith belief that they would be permitted to erect their residence thereon at a distance of more than 75 feet fronting on Forest Trail, and at a less distance than 75 feet from Bridal Path." There was the additional finding "that it will be impossible to erect the residence proposed by the defendants on the lot owned by Robert David Henderson and Gladys Whitley Henderson if they are required to erect said residence at a distance of 75 feet from both Forest Trail and Bridal Path, and that it will be impossible to erect any character of residence on said lot if required to set same back 75 feet from both Forest Trail and Bridal Path, and that said lot will be rendered valueless and worthless to the defendants, if they are prevented from erecting a residence thereon at a distance of less than 75 feet from Bridal Path."

It is our duty, of course, to give effect to this restriction if we can reasonably do so and save the conveyance from being void. To apply same to Bridal Path would undoubtedly destroy the grant, so far as the purpose for which the property was acquired is concerned. We therefore conclude that the only reasonable construction to be placed upon this restriction which will give effect is to hold that the parties intended the setback

provision to apply only to Forest Trail and not to Bridal Path.

So concluding, the judgments of the Court of Civil Appeals and of the trial court are affirmed.

Opinion adopted by the Supreme Court April 23, 1941.

Rehearing overruled July 16, 1941.