**T. F. KENT et al., Appellants,**

v.

**J. W. SMITH, Appellee.**

No. 253.

Court of Civil Appeals of Texas.

Tyler.

Jan. 12, 1967.

E. Leon Phillips, Pasadena, for appellants.

Dixie & Schulman, Chris Dixie, Houston, for appellee.

DUNAGAN, Chief Justice.

This suit was filed by T. F. Kent and V. E. Edman, individually and collectively, and as representatives of a class of property owners of Tammarack Woods, a subdivision in Houston, Harris County, Texas, against J. W. Smith.

Plaintiffs' petition sought an injunction against the defendant, requiring him to remove a building from a lot within the said subdivision that was placed thereon allegedly in violation of the recorded subdivision restrictions.

Upon the hearing of the case on its merits, the case was submitted to the trial court upon the facts stipulated by the parties pursuant to Rule 378, Texas Rules of Civil Procedure, and exhibits were introduced into evidence. No witnesses were called. After considering the stipulation of facts, the exhibits, and argument of counsel, the trial court denied the injunctive relief sought by the plaintiffs. Plaintiffs duly perfected their appeal and the case is now before this court for review.

Plaintiffs (appellants) and defendant (appellee) are owners of lots situated within the Tammarack Woods Subdivision.

Paragraph V of plaintiffs' original petition reads: "Plaintiffs allege that Defendant *have* moved a twenty foot wide by fifty foot long building onto the rear portion of lot one (1) Block three (3) of the said subdivision, said property being owned by Defendant herein. That the action on the part of the Defendant, is in violation of the said subdivision restrictions, specifically, the sections quoted above. That the said building, has created an annoyance and nuisance to the neighborhood." The sections of the restrictions quoted in plaintiffs' original petition are (a) and (m).

The restrictions here involved are set forth in a single document dated July —, 1964, executed by Twenty-Eight-O-Two Corporation, the developer of the subdivision of which the lot of the defendant is a part. It contains 15 paragraphs which are designated by alphabetical lettering from (a) to (o). The paragraphs of the said restrictions, which the parties in the trial court stipulated they relied on, are as follows:

"(a) No lot shall be used except for residential purposes. The term 'residential purposes' as used herein shall be held and construed to exclude hospitals, clinics, duplex houses, apartment houses, boarding houses, hotels, and to exclude commercial and professional uses whether from homes, residences or otherwise, and all such uses of said property are hereby expressly prohibited. No building shall be erected, altered placed or permitted to remain on any lot other than on (sic) detached single family dwelling not to exceed two stories in height and a private garage for not more than three (3) cars. This restriction shall not prevent the inclusion of one story servants quarters in connection with a garage, for the use of bona-fide servants domiciled with a tenant or owner.

"(b) No building shall be erected, placed or altered on any building plot in this subdivision until 2 sets of the building plans, specifications, and plot plat showing the location of such buildings have been approved in writing as to conformity and harmony of external design with existing structure in the subdivision, and as to location with respect to topography, and finished ground elevation, by a committee composed of J. W. Clark, H. J. Pack and John Wheeler, or by a representative named by a majority of the members of said committee. In the event of death or resignation of any member of said committee, the remaining member or members shall have full authority to approve or disapprove such design and location or to designate a representative with like authority. In the event said committee, or its designated representatives, fail to approve or disapprove such design and location within thirty days after said plans and specifications have been submitted to it such approval will not be required and this covenant will be deemed to have been complied with. Neither the members of such committee nor its designated representatives, shall be entitled to any compensation for services performed, pursuant to this covenant. The duties and powers of such committee, and of its designated representatives shall cease on and after ten years from date.

"(e) No trailer, basement, tent, shack, garage, barn or other outbuilding erected on the tract shall be at any time used as a residence, temporary or permanently, nor shall any structure of a temporary character be used as a residence, nor shall any used residence be moved onto a residential lot.

"(m) No building whether a residence or otherwise, shall be moved onto a lot affected hereby without the written consent of the planning committee referred to in Paragraph (b) hereof."

The stipulated facts in the case show that defendant bought this property after he requested and received from the planning committee approval of the complained-of building, pursuant to which approval defendant moved it onto the back of his resi-

dential lot. It was also stipulated that the building in question was an outbuilding. The precise outbuilding was inspected by Mr. John Wheeler, a member of the committee who granted written permission on behalf of the committee as authorized by the restrictions.

Plaintiffs further stipulated that they did not claim that the building had been put to any improper use in any way.

The pertinent portions of the stipulations entered into in open court are as follows:

"* * * This is a suit to enforce restrictive covenants in a certain subdivision situated in Harris County, Texas known as Tammarack Woods. * * *

"* * * Mr. and Mrs. J. W. Smith, are residents in and owners of a lot within the subdivision known as Tammarack Woods.

"It is further stipulated that Mr. and Mrs. Smith purchased their property and moved thereon as their residence in the month of April in the year of 1965.

"Prior to the purchase of this property, the defendant requested from the Committee mentioned in the restrictions permission to put upon the property the outbuilding which is the subject matter of this litigation. Mr. John Wheeler, of the First State Bank of Greens Bayou, a member of said committee, inspected the building in question, which was then located on the previous residence of the defendant, J. W. Smith. After such inspection, he delivered or caused to be delivered to Mr. Smith a written notation, which is marked as defendant's exhibit number 1 in this record.

"* * * After receiving such written notation, Mr. Smith purchased the property and moved thereon as his residence.

"About one month later he moved thereon the out-building which is the subject matter of this litigation.

"* * *

"In submitting this cause the plaintiff does not claim that the said John Wheeler was not authorized to act for the committee specified in paragraph (b) of the restrictions. Rather, plaintiffs' contentions as a whole are that the committee had no authority to give permission for the placement of the building in question on the premises in question, and that the placement thereof on the property in question violates the restrictions above referred to.

"* * *

"MR. DIXIE (who represents the defendant): Would the Court permit us to call attention to the various paragraphs in these restrictions that each side is relying on?

"THE COURT: I take it you are relying on paragraph (b).

"MR. DIXIE: Well, I am also relying on (e), your Honor, and (m). (b), (e), and (m) are relevant.

"THE COURT: * * * I take it you are relying on paragraph (a)?

"MR. PHILLIPS (who represents the plaintiffs): (a), yes, sir, and (m) also. Well, primarily (a).

"THE COURT: Well, now, is there any stipulation as to the use to which this building is being put?

"MR. DIXIE: They do not claim that we are using it for residence purposes, nor for any commercial purpose.

"MR. PHILLIPS: No, sir, we do not. We have no knowledge of what it's actually being used for."

The plaintiffs contend by their sole assignment of error that "the Court erred in refusing to grant the injunction prayed for in Plaintiff's Original Petition, and its failure was an abuse of its discretion."

The plaintiffs' position is thus stated in their brief: "If the Appellee (defendant)

has the legal right to move a 20 by 50 foot buiding onto the rear of his lot, it must be derived from the permission granted to him by the Architectural Control Committee. If this committee did not have the authority to grant such right then Appellee has violated the subdivision restrictions and the trial Court has abused its discretion in refusing to grant the injunction sought requiring Appellee to move the building."

In substance, it is the defendant's contention that the permission granted by the said committee gave him the right to move the building onto the lot in question.

When the various paragraphs of the restriction instrument are read together, it is apparent that the grantors contemplated that there would be outbuildings on the lots of the subdivision because paragraph (e) provides that no outbuilding shall be used as a residence, temporarily or permanently. If the restrictions intended to say that there would be no outbuildings at all, then certainly it would be meaningless to provide that an outbuilding shall never be used as a residence. Furthermore, paragraph (m) provides that: "No building whether a residence or otherwise" shall be moved onto a lot without the consent of the planning committee referred to in paragraph (b) of the restrictions. If the restrictions intended to say that no outbuildings would ever be allowed, it would likewise be meaningless to provide, as paragraph (m) does, that a building other than a residence could not be moved onto a lot without the written consent of the planning committee.

Paragraph (a) provides that no lot shall be used except for residential purposes. In the second sentence, it defines "residential purposes" to exclude certain specified uses. The third sentence, upon which appellants relied, reads as follows:

"  *  *  * No building shall be erected, altered placed or permitted to remain on any lot other than on (sic) detached single family dwelling not to exceed two stories in height and a private garage for not more than three (3) cars.  *  *  *"

The final sentence provides that "This restriction shall not prevent the inclusion of one story servants quarters in connection with a garage, for the use of bona-fide servants domiciled with a tenant or owner."

It is our considered opinion that the purpose of the restrictions in paragraph (a) is to provide for a single family dwelling, to prevent duplexes, apartments, and the other excluded uses therein stated which will accommodate more than one family and to prevent more than one family from residing on one lot.

The sentence in question cannot be lifted from the context of its own paragraph (a) and the balance of the restriction instrument and read in total isolation so that "one detached single family dwelling" is expanded to mean that the dwelling house is the only building of any kind which will be allowed on the lot. This is so because paragraphs (e) and (m) specifically mention other buildings and provide that they can be moved onto a lot only by the written consent of the planning committee (which consent was obtained) and when so moved cannot be used as "a residence temporarily or permanently."

In Thornton v. Wings of Faith Tabernacle, Inc., 290 S.W.2d 572, (Tex.Civ.App., Amarillo) 1956, writ ref., n. r. e., the restrictions confined the use of all lots "to residence purposes." The restrictions also created a neighborhood committee empowered to approve or disapprove the design of buildings and their location and "to perform such other duties for the benefit of the several owners of lots in the subdivision as may be authorized from time to time by a majority vote of said lot owners." The owners of a majority of the lots in the subdivision then executed and recorded a stipulation which authorized and directed the neighborhood committee to permit the construction of a church on certain lots in the subdivision. Pursuant to such instructions, the committee did file an "Annulment of Restrictions" for the benefit of the church

as to certain lots in the subdivision, thereby contradicting and abrogating the restriction which limited the entire subdivision "to residence purposes only."

Suing to prevent erection of the church, plaintiff in that case contended, as do plaintiffs here, that the committee had no authority to so act in face of the express restriction which provided for "residence purposes only" but the court held otherwise, stating:

"* * * If the restrictions controlled the entire matter, there would have been no use in * * * filing the instrument giving a committee the right to do certain things * * *.

"* * *

"* * * To construe these instruments that the owner of one lot could enjoin the building of the church in question regardless of the action taken by the committee upon the request or direction of the majority of the lot owners would be to disregard altogether the Declaration of Neighborhood Committee. * * * These instruments which were filed and recorded together created the restrictions and likewise creates the right and method to amend the restrictions, and we think that appellants and appellee purchased the lots under the provisions of the same instruments, and if there is any uncertainty, the uncertainty must be construed in favor of the grantee. Couch v. Southern Methodist University, Tex. Com.App., 10 S.W.2d 973; Baker v. Henderson, 137 Tex. 266, 153 S.W.2d 465. * * *" See also Stanford v. Brooks, 298 S.W.2d 268, (Tex.Civ.App., Fort Worth) 1957, n. w. h.

■ An unambiguous restriction will be enforced as written, and may not be stretched, extended, enlarged, or changed by construction. A just and fair interpretation will be given thereto, bearing in mind the object of the grant, and ascribing to the words their ordinary and commonly ac-

cepted meaning. 16 Tex.Jur.2d, page 15, Sec. 118.

[4] Ascribing to the words used in these restriction paragraphs in the instant case their ordinary and commonly accepted meaning, we believe that it was contemplated that outbuildings incidental to normal residential use could be allowed in the subdivision with approval of the planning committee, but must not be used for improper purposes. There being no pleading or proof in this record as to the use being made of this outbuilding in question, the trial court nor this court can determine whether it is being put to improper purposes and uses.

We believe that the provisions of the various paragraphs of the restrictions can be harmonized if we ascribe to all the words their ordinary and commonly accepted meaning.

■ However, if it can be said there is conflict or doubt between the literal language of one sentence in paragraph (a) and the language of paragraphs (b), (e) and (m), then the established rule of construction will apply that the doubt must be resolved in favor of the defendant, the grantee. The law in this state is that the restriction is construed strictly in favor of the grantee, and the ambiguity resolved in favor of the free use of the land. 16 Tex.Jur. 2d, pages 15 and 17, Sec. 118 and Baker v. Henderson, 137 Tex. 266, 153 S.W.2d 465.

■ The plaintiffs also contend in their brief that the official committee could not permit the building in question to be placed on the lot because it did not conform to the harmony of external design with existing structures within the subdivision and because the building was of wood construction with composition shingles and the wood was not redwood or cedar as required by Sections (g) and (h) of the restrictions. There is no pleading or proof of the composition of the outbuilding in question. Moreover, the plaintiffs stipulated in the trial court that they relied upon Sections

(a) and (m) of the restrictions. This contention, therefore, was not raised in the court below. The issue cannot be raised for the first time on appeal. State of California Department of Mental Hygiene v. Bank of the Southwest National Association, 163 Tex. 314, 354 S.W.2d 576, 581, 1962; Brunson v. Brunson, 372 S.W.2d 761, 764 (Tex.Civ.App., Amarillo) 1963, n. w. h. and Clark v. Texaco, Inc., 382 S.W.2d 953, 958, 959, (Tex.Civ.App., Dallas) 1964, writ ref., n. r. e.

■ After a careful review of the record in this case, we think the trial court's action in denying to plaintiffs the injunctive relief sought was proper and should be affirmed. Accordingly, it is so ordered.