**WOODLAND TRAILS NORTH COMMU-NITY IMPROVEMENT ASSOCIA-TION, Appellant,**

v.

**Anthony C. GRIDER, Appellee.**

**No. 01–82–0482–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

May 5, 1983.

Rehearing Denied July 28, 1983.

James H. Leeland, Houston, for appellant.

R. Mark Schultz, Houston, for appellee.

Before EVANS, C.J., and DOYLE and COHEN, JJ.

## OPINION

EVANS, Chief Justice.

This action was initiated by Woodland Trails North Community Improvement Association to enforce certain restrictions governing the use of property in a residential subdivision. The appellee, a homeowner in the Woodland Trails North, Section I subdivision, had converted his attached two-car garage into additional living space, and the Association sought a mandatory injunction to require him to restore the garage to its original purpose. The Association appeals from the trial court's order denying its application for injunctive relief.

In November, 1977, appellee, a police officer, decided to convert his attached two-car garage into a family den. In this conversion, he removed the two garage doors facing the street, and replaced them with arched windows and paneling to match the rest of the house. The work was completed in about eight months at a total cost of $1500 to $1600, excluding furnishings.

The trial court filed separate findings of fact and conclusions of law, determining that any restrictive covenants prohibiting the conversion of garages in the subdivision had been abandoned and also that the Association was guilty of laches and estopped from asserting that the appellee had violated any such restrictive covenants. In four points of error, the Association challenges the legal and factual sufficiency of the evidence to support these findings and conclusions.

We need not consider the contentions advanced by the Association under its four points of error because we have determined, as a matter of law, that the restrictive covenant in question was not violated by the appellee's conversion of his attached garage into additional living space. Section 1 of the Woodlands Trails North, Section I restrictions provides:

1. *Land Use and Building Type.* All lots shall be known and described as lots for residential purposes only (hereinafter sometimes referred to as "residential lots"), and no structure shall be erected, altered, placed, or permitted to remain on any residential lot other than one single-family dwelling not to exceed two (2) stories in height and a detached or an attached garage for not less than one car. As used herein, the term "residential purposes" shall be construed to prohibit the use of said property for duplex houses, garage apartments, or apartment house; and no lot shall be used for business or professional purposes of any kind, nor for any commercial or manufacturing purpose. No building of any kind or character shall ever be moved onto any lot within said subdivision, it being the intention that only new construction shall be placed and erected thereon.

The Association's claim for injunctive relief is based upon the premise that the above quoted paragraph requires all residential property owners in the subdivision to construct and maintain garages on their lots. We do not read the language of this

restrictive covenant as requiring that each homeowner in the subdivision *must* construct and maintain a garage on his residential premises. Instead, as we read this restriction, it is a limitation on the type of structures a property owner may construct. Thus, we hold that appellee did not violate the terms of this restriction by converting the character and use of his garage to additional living space.

The manifest purpose of this restrictive covenant was to permit only one and two-story single family dwellings, and related garages, on residential lots, and to prohibit duplexes, apartments, and commercial buildings. *See, Kent v. Smith,* 410 S.W.2d 833 (Tex.Civ.App.—Tyler 1967, no writ). The Association does not contend that the language of this restriction is ambiguous. However, if there should be any doubt as to the meaning of its terms, it must be construed most favorably to the homeowner. *Baker v. Henderson,* 137 Tex. 266, 153 S.W.2d 465 (1941).

■ In view of our holding that the appellee's conversion of his garage into additional residential living space did not violate the terms of Section 1 of the restrictions, we must next consider whether the nature of such conversion required the prior approval of Woodlands Trail's Architectural Control Committee, and, if so, whether the appellee's failure to obtain such approval entitled the Association to relief in the manner of a mandatory injunction. Section 2 of the Woodland Trails restrictions provides:

2. *Architectural Control.* No building shall be erected, place, or altered on any lot until the construction plans and specifications and a plot plan showing the locations of the structure have been approved by the Architectural Control Committee composed of Glenn W. Loggins, William S. O'Donnell, and Eugene D. O'Donnell, or a representative designated in writing by them, as to quality of workmanship and materials, harmony of external design with existing structures, as to location with respect to topography and finished grade elevation. No fence

or wall shall be erected, placed, or altered on any lot nearer to the street that the minimum building set back lines as shown on the recorded plat, except decorative or protective fencing for community improvement as approved by the Architectural Control Committee. In the event said committee or a representative designated in writing by them, fails to approve or disapprove such design and location within thirty (30) days after said plans and specifications have been submitted to it, approval will not be required and this article will be deemed to have been fully complied with.

We hold that under the terms of Section 2, the appellee, as a residential homeowner, was required to obtain approval of the Architectural Control Committee before making substantial alterations of his existing residence and garage. Thus, he was required to submit his construction plans and specifications to the Architectural Control Committee for its approval as to "quality of workmanship and materials" and also with respect to the "harmony of external design with existing structures."

■ The terms of Section 2 invest the Architectural Control Committee with broad discretionary powers, and in exercising its authority, the Committee is required to act "reasonably and in good faith." *Davis v. Huey,* 620 S.W.2d 561 (Tex.1981). Furthermore, since the quoted standards of Section 2 are ambiguous, all doubts must be resolved in favor of the homeowner's free use of his premises. *See, Johnson v. Linton,* 491 S.W.2d 189 (Tex.Civ.App.—Dallas 1973, no writ).

■ Even if the trial court considered that the appellee's failure to obtain prior approval of his plans and specifications by the Architectural Control Committee constituted more than a technical violation of the terms of Section 2 of the restrictions, it was not required, under the evidence before it, to grant the Association's request for a mandatory injunction. The court was empowered, indeed required, to balance the equities between the appellee and the Asso-

ciation, in deciding whether injunctive relief should be granted. It properly weighed the harm which the appellee would suffer if the relief should be granted, against the benefits to be derived by the Association in compelling a homeowner, such as appellee, to seek approval of the Architectural Control Committee before making changes in improvements erected on their lots.

In determining the harm which appellee would sustain if required to restore the face of his garage to its former condition, the trial court could properly have considered the undisputed testimony that appellee had worked on its conversion for a period of eight months at a cost of approximately $1500. Based upon color pictures taken of appellee's home, both before and after completion of the conversion, the trial court could have decided that the only real change of the outward appearance of the appellee's home, after the conversion, was the replacement of two-garage doors with windows and paneled siding. The court could have concluded from the evidence before it that the outward appearance of appellee's home was actually enhanced by the conversion and that this, in turn, would have enhanced the value of other homes within the subdivision. Thus, the court had evidence before it which would support a conclusion that the harm which the appellee would probably suffer as a result of the granting of a mandatory injunction, would far outweigh the benefits, if any to be gained by the Association in compelling strict compliance with Section 2 of the restrictions. *See, Townplace Homeowner's Ass'n v. McMahon,* 594 S.W.2d 172 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd, n.r.e.); *Hoyt v. Geist,* 364 S.W.2d 461 (Tex.Civ.App.—Houston 1963, no writ). We, therefore, hold the record does not establish error on the part of the trial court in denying the Association's request for mandatory injunctive relief.

The trial court's judgment is affirmed.

## On Motion for Rehearing

We have considered all assignments of error raised by the Association in its motion for rehearing, and the same are overruled. We discuss in this opinion only those contentions that relate to the equitable considerations supporting the trial court's denial of a mandatory injunction.

The Association contends that we erred in concluding that the trial court properly exercised its discretion in balancing the equities between the parties because it made no express findings of fact and conclusions of law on that matter. The Association also contends that there are no pleadings or evidence which would support the trial court's denial of a mandatory injunction on the basis of a balancing of the equities.

The record reflects that the appellee, in his first amended answer, expressly asserted that the subdivision restrictions did not prohibit the alteration work in question. Thus, the trial court was obligated to interpret and apply the restrictions to the particular circumstances, and also to determine what relief, if any, it should give to the Association in view of the appellee's failure to secure the Architectural Control Committee's prior approval of the work. In making that determination, the trial court had the authority, albeit the duty, to balance the rights and equities between the parties, and upon those considerations, to decide whether a mandatory injunction should be ordered. *See, Sewage Co. v. Bishop,* 30 S.W.2d 412 (Tex.Civ.App.—Dallas 1930, writ ref'd); *General Tire & Rubber Co. v. Texas Pacific Coal & O. Co.,* 102 S.W.2d 1086 (Tex.Civ.App.—Fort Worth 1937, writ ref'd). The trial court determined, upon adequate pleadings and evidence, that a mandatory injunction should not issue, and an abuse of its discretion has not been demonstrated.

The motion for rehearing is overruled.