TANGLEWOOD HOMES
ASSOCIATION, INC., et
al., Appellants,

v.

Charles L. and Sally HENKE,
Appellees.

No. 01–86–00024–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 22, 1987.
Rehearing Denied March 12, 1987.

Eugene M. Nettles Scott, Douglass & Luton, Ronald M. Chamberlain, Jr., Hutchinson & Grundy (of counsel), Andrew R. Harvin Hutchinson & Grundy, Houston (of counsel), for appellants.

A.C. Charles Dippel, J. Mark Breeding, Robert L. Burns, Sears & Burns, Houston, for appellees.

Before SAM BASS, COHEN and DUNN, JJ.

### OPINION

DUNN, Justice.

This is an appeal from the denial of a permanent injunction. Trial was to a jury. The trial court rendered a take nothing judgment against the appellants on their claim, and a take nothing judgment against the appellees on their counterclaim. The trial court awarded the appellees $6,500 in attorney's fees.

The appellants are Tanglewood Homes Association, Inc. (the "Association"), Mrs. Marjorie W. Robertson, the appellees' neighbor to the west, and Mr. Martin M. Sheets and Mr. & Mrs. Darwin R. La-

Barthe, the appellees' neighbors to the south. The appellees are Mr. and Mrs. Charles L. Henke, the owners of a home on lot 4, block 10 of Tanglewood, section 3.

On February 14, 1950, Tanglewood Corporation recorded both a plat for Tanglewood, section 3, and Reservations, Restrictions, and Covenants (the "Restrictions"), which were adopted by a resolution of the board of directors of Tanglewood Corporation. The Restrictions state that they were adopted for the purpose of "carrying out a uniform plan for the improvement and sale of TANGLEWOOD Section 3 ... to restrict the use and the development of the property located in TANGLEWOOD Section 3 in order to insure that it will be a high class restricted district."

The specific sections of the Restrictions pertinent to this appeal are as follows:

Now therefore, TANGLEWOOD CORPORATION being the sole owner of property known as TANGLEWOOD Section 3, an Addition in Harris County, Texas, according to plat thereof filed in the office of the County Clerk, Harris County, Texas, on February 14, 1950, under Clerk's File No. 710,867, does hereby impose the following restrictions on said property which shall constitute covenants running with the land, and shall inure to the benefit of TANGLEWOOD CORPORATION, its successors and assigns and to each and every purchaser of lands in said Addition and their assigns and to TANGLEWOOD HOMES ASSOCIATION, INC., and any one of said beneficiaries shall have the right to enforce such restrictions using whatever legal method deemed advisable; *and if any one of such restrictions shall be held to be invalid, or for any reason is not enforced, none of the others shall be affected or impaired thereby, but shall remain in full force and effect.* (Emphasis added.)

## GENERAL RESTRICTIONS

(6) The word "house" or "residence" as used herein with reference to building lines shall include galleries, porches, porte cocheres, steps, projections and every other permanent part of the improvements, except roofs.

(22) If garage, servants' house or other out building is made an integral part of the residence, or is connected thereto, in a manner approved by TANGLEWOOD CORPORATION upon submission of plans and specifications, as provided in TANGLEWOOD CORPORATION Deed, the setback distances from front and sidelines of lot will then automatically become identical with those stipulated for the residence itself ...

(24) No building shall be built closer to the street or side property lines than the distance set forth in the schedule attached hereto ...

At still another point, the Restrictions recite:

Distance of Improvements from Property Lines:

The house or residence, garage, servants' house, or other outbuilding on each site in Section 3, shall not be nearer to the property lines than is indicated in the following schedule:

| BL NO. | Lot Number | Cost of Improvements | Set Back Distance (No. ft. from Lot Lines) | | | |
|---|---|---|---|---|---|---|
| | | | No. | So. | East | West |
| | | | | | House | |
| 10 | 1 | 25,000 | 10 | 40 | 25 | 10 |
| | 2–8incl | 17,500 | 10 | 40 | 10 | 10 |
| | 5 | 25,000 | 10 | 40 | 10 | 25 |

| BL NO. | Lot Number | Cost of Improvements | Set Back Distance (No. ft. from Lot Lines) | | | |
|---|---|---|---|---|---|---|
| | | | No. | So. | East | West |
| | | | | | Outbuildings | |
| 10 | 1 | 25,000 | 5 | 100 | 60 | 5 |
| | 2–8incl | 17,500 | 5 | 100 | 5 | 5 |
| | 5 | 25,000 | 5 | 100 | 5 | 60 |

(Emphasis indicates setback line restrictions applicable to the appellees' home.)

At trial, Harold DeMoss, a director of the Association, testified that the restrictive covenants were included in all the deeds from the developers to all the initial purchasers of lots in section 3. He also testified that the Restrictions have continued in force since that time, and that a private organization exists to police the Restrictions. Deeds from Tanglewood Corporation to the initial purchasers of four different lots in section 3 were introduced into evidence, each containing the identical reference to the Restrictions.

The appellees have erected several structures on their property that are in violation of restriction 24. The existence of these structures is undisputed, and are as follows:

(1) a chimney erected on the east side of the front room of the appellees' house within 10′ of the east property line;

(2) a portion of a new room added to the northeast corner of the appellees' house which is within 10′ of the east property line;

(3) a spa or hot tub on a concrete slab enclosed by a new room addition completely enclosing the spa and extending completely out to the east property line, or within one to eight inches of the line; and

(4) a pool equipment room extending to within 10′ of the east property line parallel with the spa or hot tub room described in (3) above.

In addition, the appellees have an attached garage or carport on the west and northwest portions of their lot extending to within 10′ of the west and north property lines. This attached garage or carport is in violation of restriction 22.

The jury, in response to special issues, found as follows: Tanglewood was established and has been maintained pursuant to a general plan or scheme of development for single family residential use; the appellants had not unreasonably delayed in asserting this action; the appellants were not estopped from enforcing the deed restrictions concerning the building setback lines or the height of the fence; and that the appellants had not waived their right to enforce the deed restrictions concerning the building setback lines or the height of fences. The jury also found that, prior to the time that the appellees constructed their improvements, the Restrictions had been abandoned with respect to the building setback lines and the height of fences. Further, the jury found that the appellants' reasonable and necessary attorney's fees were $50,000 for trial, $11,000 for appeal to this Court, and $5,000 for appeal to the Texas Supreme Court, and that the appellees' reasonable and necessary attorney's fees were $40,000, $15,000, and $7,500 respectively.

In points of error two and three, the appellants argue that the trial court erred in entering judgment against them with respect to the additions to the east side of the appellees' residence because there was "no evidence" or insufficient evidence to support the jury's finding that the building setback line restrictions had been abandoned. Both of these points were raised in the appellants' motion for new trial.

The court submitted special issue number two to the jury. It asked:

Do you find from a preponderance of the evidence that prior to the time CHARLES and SALLIE [sic] HENKE constructed their improvements on their property that the deed restrictions had been abandoned with respect to the building set-back lines or the height of the fences?

Answer separately "Yes" or "No" with respect to the following:

a) building set-back lines ——
b) height of fence ——

You are instructed that the term, 'abandonment' means that the violations of the deed restrictions in Section 3 of the Tanglewood Addition were so extensive and material as to reasonably lead to the conclusion that the general plan or scheme of development in imposing such restriction for Section 3 of Tanglewood Addition has been abandoned. You may consider the following factors among any others you deem appropriate: (1) the number of violations; (2) the nature of the violations; (3) the severity of the violations; (4) any prior acts of enforcement of the restrictions; and (5) whether it is still possible to realize to a substantial degree the benefits intended through the restrictions.

The jury answered in the affirmative to both (a) and (b). The appellants do not challenge the jury's finding that the fence height restrictions were abandoned; therefore, that issue is not before us. The appellants do, however, challenge the jury's finding that the building setback line restrictions have been abandoned. On its face, special issue number two does not distinguish between the two separate setback line restrictions relevant to this case. Those two restrictions are restriction 24, as it applies to the main residence (the "main residence restriction"), and restriction 22 applicable to attached garages and outbuildings.

■ The appellees argue that since restriction 22 references restriction 24, a violation of the attached garage setback line restriction is the same as a violation of the main residence restriction. We overrule this argument for several reasons. First, the argument ignores the fact that the Restrictions contain a severability clause. The violation of one restriction does not necessarily constitute the violation of another. Second, the fact that restriction 22 states that the setback line restriction for a connected garage is identical with those for the main residence itself does not negate the fact that these two restrictions serve entirely different purposes. The purpose of the main residence restriction is to insure that the house itself is located at least 40′ from the street, and 10′ from the neighbor's side yard. If this restriction is violated, the consequences are readily visible from the street. In contrast, garages, servants' houses, or outbuildings are not as visible to a passerby, because they must be located at least 100′ from the street. The only effect of restriction 22 is that if the garage is "made an integral part of the residence, or is attached thereto," the setback from the sidelines of the property must be 10′ rather than 5′. The aesthetic impact of a violation of this restriction is much less noticeable than a violation of the main residence restriction. These two restrictions serve entirely different purposes; therefore, a waiver of one restriction does not constitute a waiver of the other.

■ With respect to restriction 22, there are 56 homes in Tanglewood, section 3, and the record reflects that there are at least 15 homes with attached carports or garages that are within 10′ of the sidelines of the property. Further, at least 8 of these attached carports or garages extend more than 5′ over the setback line. This evidence is more than sufficient to uphold the jury's finding that the setback line restriction, with respect to attached garages and carports, has been abandoned. *New Jerusalem Baptist Church, Inc. v. City of Houston*, 598 S.W.2d 666, 669 (Tex.Civ. App.—Houston [14th Dist.] 1980, no writ).

■ This does not, however, resolve the issue of whether the main residence restriction has been abandoned. To establish abandonment, a party must prove that the violations are so great as to lead the mind of the average man to reasonably conclude that the restriction in question has been abandoned. *Cowling v. Colligan*, 158 Tex. 458, 461–62, 312 S.W.2d 943, 945–46 (1958); *New Jerusalem*, 598 S.W.2d at 669. In *New Jerusalem*, the court stated that the factors to be considered in making this determination are, "the number, nature, and severity of the then existing violation, any prior acts of enforcement of the restriction, and whether it is still possible to realize to a substantial degree the benefits

intended through the covenant." 598 S.W.2d at 669.

In *Finkelstein v. Southampton Civic Club*, 675 S.W.2d 271, 278 (Tex.App.— Houston [1st Dist.] 1984, writ ref'd n.r.e.), an unincorporated civic association and five residential homeowners filed suit to enforce deed restrictions in order to prevent the defendant from subdividing an original corner lot into two smaller residential lots to be used for separate dwellings. The plaintiffs were granted summary judgment. On appeal, the defendant argued that the deed restrictions had been waived. The defendant's affidavit identified two other residences in Southampton in violation of the corner lot fronting restriction. This Court held, the "affidavit proof of two fronting violations reflects, at best, isolated instances of breach of the restriction. We hold that they are insufficient as a matter of law in number, nature, or severity to constitute waiver of the restrictive covenant's benefits and enforceability." *Id.*

Similarly, in this case, the record reflects that only 5 homes in Tanglewood, section 3, violate the main residence restriction. Furthermore, the severity of these violations is minimal. According to the appellees' own expert, the five main residences in violation of the restriction encroached over the setback line by at the most 7.8", 12.0", 6.0", 9.6", and 13.8". These violations are not so severe that a reasonable person would notice them, and conclude therefrom that the main residence restriction had been abandoned. In contrast, parts of the additions to the east side of the appellees' home extend more than 9 feet over the setback line.

■ We hold that these five violations of the main residence restriction are insufficient as a matter of law, in number, nature, and severity to constitute a waiver of the restrictive covenant's benefits and enforceability. Therefore, we hold that there is "no evidence" to support the finding that the main residence restriction was abandoned. We have no need to reach the appellants' insufficient evidence point. We do, however, specifically reserve this decision. *Biggers v. Continental Bus System*,

157 Tex. 351, 365–66, 303 S.W.2d 359, 369 (1957); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex.L.Rev. 361, 371 (1960).

Points of error two and three are sustained.

In point of error one, the appellants argue that the trial court erred in awarding attorney's fees to the appellees. The appellees, in their first amended original answer, counterclaimed against the appellants, seeking a declaratory judgment under the Declaratory Judgment Act. TEX. CIVIL PRAC. & REM.CODE ANN. § 37 (Vernon 1986). The appellees prayed for the award of attorney's fees under § 37.-009, which states that "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIVIL PRAC. & REM.CODE ANN. § 37.009.

In the final judgment, the trial court denied the appellees' counterclaim for declaratory judgment. Nevertheless, the trial court awarded the appellees "reasonable attorney's fees that the court deems just and equitable in the sum of Six Thousand Five Hundred and no/100 Dollars ($6,500.00)."

■ Upon review of the award of attorney's fees under the Declaratory Judgment Act, we must invoke an abuse of discretion standard. *Contact Products, Inc. v. Dixico, Inc.*, 672 S.W.2d 607, 610 (Tex.App.— Dallas 1984, no writ). The appellants, in their post-submission brief, state that they are not complaining on appeal that the trial court's decision denying the appellees' counterclaim for declaratory relief was improper. The appellants are only contending that the trial court erred in awarding the $6,500 in attorney's fees to the appellees. The appellees respond that the trial court abused its discretion in not awarding the appellees the $40,000 in attorney's fees determined by the jury to be reasonable and necessary for the trial of this case.

■ Initially, we reject the appellants' argument that the appellees are not entitled to attorney's fees because their counterclaim for declaratory judgment was de-

nied. An award of attorney's fees under the Declaratory Judgment Act is not limited to the prevailing party. *District Judges v. Commissioners Court,* 677 S.W.2d 743, 746 (Tex.App.—Dallas 1984, writ ref'd n.r. e.). Further, we reject the appellees' argument that the words "equitable and just," used in the *Declaratory Judgment Act,* and the words "reasonable and necessary," describing the attorney's fees found by the jury, are synonymous. A reading of § 37.-009 shows that this section requires attorney's fees to be both "reasonable and necessary" and "equitable and just." If these phrases were synonymous, there would be no need to include both of them in the statute. The legislature is presumed not to have used redundant and unnecessary wording. *Eddins-Walcher Butane Co. v. Calvert,* 156 Tex. 587, 590, 298 S.W.2d 93, 96 (1957).

▆ The appellees' counterclaim sought a declaratory judgment declaring, among other things, that the Restrictions do not impose a general plan or scheme of development as to the setback of improvements from the street or side property and the height of structures in Tanglewood, section 3. An action for declaratory judgment is an appropriate vehicle for seeking the determination of the validity, applicability, or enforceability of restrictive covenants on property. *Jones v. Young,* 541 S.W.2d 200, 201 (Tex.Civ.App.—Houston [14th Dist.] 1976, no writ).

▆ Under the circumstances of the case, we cannot say that the trial court abused its discretion in awarding the appellees $6,500 in attorney's fees. But, in light of our finding in points of error two and three that the main residence restriction has not been abandoned, the trial court may wish to reconsider its assessment of attorney's fees.

Point of error one is overruled.

In point of error four, the appellants argue that the trial court erred in not granting a new trial because the jury's finding of abandonment in special issue number two, and the jury's finding of "no waiver" in special issue number three, are in irreconcilable and fatal conflict. This argument is without merit.

Special issue number two has been set out above. Special issue number three is as follows:

Do you find from a preponderance of the evidence that plaintiffs have waived their right to enforce the deed restrictions against the erection of improvements within the building set-back lines or in the height of fences in the TAN-GLEWOOD ADDITION, Section 3?

Answer 'Yes' or 'No' separately with respect to the following:
a) building set-back lines \_\_\_\_\_
b) height of fences \_\_\_\_\_

You are instructed that the term, 'waived,' as used in this Charge, means the intentional relinquishment of a known right or such conduct which warrants an inference of the relinquishment of such right.

In order to find that the plaintiffs have waived any restrictions, the preponderance of the evidence must show that the pre-existing violations are (1) substantial in nature; (2) materially affect the plaintiffs in the enjoyment of his or her property; and (3) further that the plaintiffs had knowledge of the other violations prior to filing suit.

The appellants did not object to the court's charge. The jury answered parts (a) and (b) in special issue number two in the affirmative, and parts (a) and (b) in special issue number three in the negative.

▆ The appellants argue that Texas courts treat abandonment and waiver as the same doctrine. Assuming, without deciding, that this is true, the appellants nevertheless ignore the fact that in this case, abandonment and waiver were defined differently. Special issue number two instructed the jury to consider "any prior acts of enforcement of the restrictions," and "whether it is still possible to realize to a substantial degree the benefits intended through the restrictions." Special issue number three instructed the jury that in order to find waiver, it had to find that the pre-existing violations "materially affect the plaintiffs in the enjoyment of his

or her property," and "further that plaintiffs had knowledge of the other violations prior to filing suit." The definitions and instructions for these two issues submitted to the jury are substantially different, and an affirmative answer to special issue number two, and a negative answer to special issue number three, do not conflict.

Point of error four is overruled.

The appellees, in their brief as appellants, argue in point of error one that the trial court erred in overruling the appellees' special exceptions and motion for instructed verdict, and in failing to render declaratory relief, because there is no *general plan or scheme of development* as to setback lines or the height of improvements in Tanglewood, section 3. They contend that the Association's retained power of modification, in and of itself, prevents the imposition of a general plan, and that the appellees did not have notice of the criteria for the exercise of these discretionary powers.

■ We decline to discuss this point, because in the case before us there is no allegation that the Association utilized its discretionary powers. The appellees' home improvements violated the express provisions of restrictions 22 and 24. The mere existence of the power to modify a restrictive covenant does not render the covenants unenforceable. *See Nelson v. Jordan*, 663 S.W.2d 82 (Tex.App.—Austin 1983, writ ref'd n.r.e.).

Furthermore, even if this reservation of the power to modify the restrictive covenants destroys the idea of a general plan, this paragraph could be deleted from the Restrictions through the use of the severability clause.

Point of error one is overruled.

In point of error three, the appellees claim that the trial court erred in admitting into evidence the appellants' exhibits 15, 16, 18, 18–A, and 19 as evidence of the imposition of a general plan or scheme of development for Tanglewood, section 3. The appellees claim that the appellants' answers to interrogatories swore that only documents attached to the appellants' petition would be offered for that purpose. The five exhibits, which are property deeds, were not attached to the appellants' original petition.

■ The appellees have waived this point of error. It is their burden to see that a sufficient record is presented to this Court to show error. TEX.R.APP.P. 50 (d). A copy of the interrogatories served on the appellants does not appear in the transcript, and the appellees have not pointed out anywhere in the statement of facts that the interrogatories were introduced into evidence. However, even if the interrogatories are contained in the statement of facts, it is not our burden to find them. TEX.R. APP.P. 74(d).

Point of error three is overruled.

In point of error two, the appellees argue that the trial court erred in submitting special issue number one to the jury, because there is no evidence to support the finding that Tanglewood, section 3, was established and had been maintained pursuant to a general plan or scheme of development for single family residential use. This argument is without merit.

■ This point cannot succeed unless there is no evidence that, when viewed in the most favorable light, could support the jury's finding. *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400, 401 (Tex. 1981). The evidence in the record showing a general plan or scheme is significantly more than a scintilla. Mr. Harold DeMoss, a director of the Association, testified that the restrictive covenants were included in all the deeds from the developers to all the initial purchasers in Tanglewood, section 3. Additionally, deeds from the developers to the initial purchasers of four different lots in section 3 were introduced, all of which contained the identical reference to the Restrictions. Finally, Charles Henke admitted that he knew of the existence of deed restrictions in the subdivision.

Point of error two is overruled.

The appellees argue in point of error four that the trial court erred in failing to render a declaratory judgment that paragraph three of the Bailey deed is void, and

that the Restrictions are void for failure to adequately notify the appellees and other lot owners of the criteria upon which plans will be approved or rejected.

Again, the appellees have failed to present this Court with a sufficient record to enable it to decide the appellees' point. In their brief, the appellees point to the appellants' exhibit 15 as the deed from the developer to Bailey. However, the appellants' exhibit 15 is a deed from the developer to a Mr. Joseph J. Johnson. Furthermore, Mr. Henke testified that he lives at lot 4, block 10 of Tanglewood, section 3. The appellants' exhibit 15 is a deed for lot 5, block 10.

However, we note from the record that the appellants' exhibit five is a deed conveying lot 4, block 10 to Charles and Leia Bailey. Paragraph three of this deed states:

3. No improvements of any character shall be erected, or the erection thereof began, or the change made in the exterior design thereof after original construction, on this property, until complete plans and specifications have been submitted and approved in writing by Tanglewood Corporation. This restriction terminates contemporaneously with the other restrictions applicable to this site.

■ The record reflects that the appellees submitted plans upon the request of the Association. The plans were rejected by the Association because the proposed improvements violated restrictions 22 and 24. There is no contention that the Association was attempting to enforce modified restrictions on the appellees. The appellees had notice of the express setback provisions sought to be enforced in this case.

Point of error four is overruled.

The appellees' points of error five and six have already been addressed, and overruled.

Finally, the appellees in cross-point one, argue that the trial court did not abuse its discretion in refusing to order the appellees to tear down the improvements, because upon balancing the equities between the parties, the harm the appellees would suf-fer far outweighed the benefits, if any, to the appellants in compelling strict compliance with the restrictions in question. This argument is without merit.

In support of their argument, the appellees cite *Woodland Trails North Community Improvement Association v. Grider,* 656 S.W.2d 919 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.). In *Woodland Trails,* this Court held that the homeowner's improvements did not violate the restrictive covenant in question. The issue in *Woodland Trails* was whether the civic association was entitled to a mandatory injunction as a result of the homeowner's failure to obtain prior approval of his plans. This Court stated that the trial "court was empowered, indeed required, to balance the equities between the appellee and the Association, in deciding whether injunctive relief should be granted." *Woodland Trails,* 656 S.W.2d at 922. The trial court denied injunctive relief, and this Court affirmed that decision.

The instant case is readily distinguishable from *Woodland Trails.* The appellees herein have admittedly violated two express restrictions regarding setback lines. The issue was whether these restrictions had been abandoned. The trial court found that the fence height restrictions had been abandoned, and we hold that restriction 22 has been abandoned, but that the main residence restriction has not been abandoned. Therefore, the appellees have violated an express restriction that is still in force.

■ With respect to the appellees' argument that the equities are in their favor, we note that those who seek equity must have been equitable in their own actions. *Grella v. Berry,* 647 S.W.2d 15, 17 (Tex. App.—Houston [1st Dist.] 1982, no writ). The record in this case reveals that in the summer of 1984, the appellees began construction of the improvements to their home without the prior approval of the Association. In late November, Mr. Blevins, the general manager of the Association, learned of this activity as a result of some neighbors' complaints. Mr. Blevins told the appellees that they needed to sub-

mit plans to the Association. The appellees subsequently did this. Mr. Blevins also gave the appellees a copy of the deed restrictions.

On December 11, 1984, the Association wrote the appellees to inform them that their plans were in violation of the Restrictions. The Association urged the appellees to suspend construction. The appellees continued construction.

On approximately December 18, 1984, Mr. DeMoss and Mr. Dowling personally visited the appellees' home. The construction completed by that time was minimal. Mr. DeMoss and Mr. Dowling observed that the slab for the hot tub had been poured, and that the construction of the fence had begun. Mr. Henke did not tell these two men that what appeared to be a brick fence was going to become the east wall of a new room. Mr. DeMoss pointed out several violations of the Restrictions to Mr. Henke. Mr. DeMoss specifically told Mr. Henke that he could not build on the east side of his house within 10' of the property line. Mr. DeMoss also told Mr. Henke that he needed to re-submit the plans before going ahead with any more construction. The appellees never submitted another set of plans, and they continued the construction.

On January 10, 1985, there was a second meeting at the appellees' home. In addition to Mr. Dowling and Mr. DeMoss, Mr. Blevins was in attendance. At that time, Mr. DeMoss told Mr. Henke not to enclose the room on the east side of the house. After this second meeting, Mr. Henke agreed to stop construction in "contested areas."

On January 15, 1985, Mr. Dowling, as president of the Association, sent a second letter to the appellees. In part, this letter stated:

As I wrote to you at an earlier date, there are several apparent violations in your present building construction. At that time I urged you to postpone further construction as a means of conserving your own funds. I again urge you to withhold further construction until our Board can make a final decision relative

to your enlargement of your home. We are sincerely trying to find a way that will help you achieve your construction goals but at the same time preserve the character of the Tanglewood area through the preservation of our covenant. I have asked Steve Blevins to deliver this note to you personally as I wanted you to be advised immediately that the Board has not approved of your suggested modifications.

On February 18, 1985, Mr. DeMoss, as chairman of the building and restrictions committee, sent the appellees a letter detailing the ways in which the improvements violated the Restrictions. The violations specified in the letter are as follows:

(i) The brick wall along the east property line is more than six feet in height;

(ii) The following improvements violate the ten foot building setback line along the east side:

(a) The chimney erected on the east side of the front room;

(b) The whirlpool tub and the concrete slab surrounding that tub;

(c) Approximately 2½ feet of the new room which you have added at the northeast corner of your house;

(d) The pool equipment room; and

(e) The roof enclosing the whirlpool tub area on the east side of your house.

(iii) The roof and support columns for the covered area on the north and west side of your property are in violation of the ten (10) foot building setback lines.

The Association also offered the appellees the following compromise:

Provided you secure the written consents of each owner of a lot which abuts your property on the east, north and west and of the three lot owners directly across the street from your lot, all in a form satisfactory to the Board, the Board would consider granting the following variances:

(i) Remove the top two lines of brick from the brick wall and permit the remainder of the brick wall to remain as is;

(ii) Permit the chimney to remain in place as constructed;

(iii) Permit the room constructed on the northeast corner of your house to remain as is;

(iv) Permit the roof to overhang the east side of your house no more than three feet;

(v) Permit the concrete slab and the whirlpool tub to remain in place provided that the area surrounding this tub is not enclosed;

(vi) Permit the installation of pool and tub equipment in the area designated provided that area is not an enclosed room of any sort;

(vii) Permit the covered area along the north and west lines of your property to remain substantially as is, provided (a) all support columns for this area are placed at least ten (10) feet away from the property line and (b) the roof over-hang is cut back so that it is no closer than five (5) feet to any property line.

▆▆▆ Mr. Henke testified that after he received this letter, he hastened the construction. He also admitted telling Mr. Dowling, in profane and derogatory terms, what he thought of the letter. Clearly, the appellees did not act equitably in their dealings with the Association.

Cross-point one is overruled.

The judgment is reversed and rendered for the appellants with respect to the main residence restriction. The case is remanded to the trial judge for the entry of a permanent injunction consistent with this opinion, and for any reconsideration of attorney's fees. The remaining portions of the trial court's judgment are affirmed.