

# NUMBER 13-19-00613-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**MARY LOU BARGNESI, ET AL.,**           **Appellants,**

**v.**

**THE PELICAN CONDOMINIUM COUNSEL
OF CO-OWNERS ASSOCIATION, INC.,**         **Appellee.**

---

### On appeal from the 117th District Court
### of Nueces County, Texas.

---

## MEMORANDUM OPINION

### Before Justices Longoria, Hinojosa, and Tijerina
### Memorandum Opinion by Justice Tijerina

Appellants Mary Lou Bargnesi, et al.,[1] (self-renters) appeal the trial court's

summary judgment in favor of appellee Pelican Condominium Council of Co-Owners,

---

[1] The appellants are Mary Lou Bargnesi, Melissa L. Kirking, Little Miss Bug, LLC, Bryan C. Kirking, and Noche Verde, LLC.

Association, Inc. (Pelican) and the trial court's denial of their motion for summary judgment. By two issues, the self-renters contend the trial court erred in granting Pelican's motion for summary judgment and denying the self-renters' motion because: (1) a resolution Pelican's board of directors (the Board) adopted implements a cost-shifting regime to some owners and not others, which effectively amended the condominium declaration (the Declaration); and (2) there is evidence supporting the self-renters' allegations that the resolution is arbitrary, capricious, or discriminatory. We affirm.

## I.  BACKGROUND

Pelican consists of sixty-four individual condominium units and is governed by the Declaration and its bylaws. The Declaration created Pelican as a membership association to act for the benefit of all unit owners. The Board managed Pelican and its affairs. The self-renters own units and are members of Pelican.

Pelican maintains a rental pool for unit owners who want to lease their units. Participating owners (rental-pool owners) execute an agreement permitting Pelican to act on their behalf, allowing Pelican to market, schedule, and manage their leases in exchange for forty percent of the rent collected. This cost defrays acquisitions costs, mortgage obligations, insurance, property taxes, and homeowner assessments. The self-renters are not part of the rental pool and therefore did not contribute to this forty-percent fee.

On January 30, 2016, at the annual owners' meeting, unit owners (those that did not lease their units) and rental-pool owners expressed frustration that the self-renters did not contribute financially for the extra expense of their leasing activity or for the

2

beneficial services provided by Pelican's rental pool. Therefore, the unit owners and rental-pool owners voted to: (1) disallow future self-rentals, (2) "grandfather"[2] in the current self-renters, and (3) impose a twenty-percent fee on those renting outside the rental pool related to their rental income. On December 5, 2016, Pelican adopted a resolution reflecting the same.

Pelican sued the self-renters seeking a declaration that its resolution disallowing future self-rentals and imposing a rental-activity fee was enforceable. *See* TEX. PROP. CODE ANN. § 82.102(a) (providing that an association may adopt and amend bylaws regulating the use, occupancy, leasing or sale, maintenance, repair, modification, and appearance of units and common elements, to the extent the regulated actions affect common elements or other units). The self-renters counterclaimed for (1) breach of contract, (2) injunctive relief, and (3) declarations that the Board membership was improper under the bylaws, the resolution is arbitrary, capricious, and unenforceable, and Pelican is improperly allocating certain fees on the self-renters. *See id.* § 82.102(c) (providing that to be enforceable, the bylaw cannot be arbitrary or capricious).

While Pelican argued the twenty-percent fee was based off rental income (like the forty-percent fee imposed on those in the rental-pool), the self-renters asserted Pelican was improperly imposing certain expenses on only them instead of all unit owners. The self-renters sought summary judgment on their declaration, and the trial court held a hearing in October 2019. In their motion for summary judgment, the self-renters argued

---

[2] According to the parties, this term means that the self-renters could continue to self-rent their units until they voluntarily joined the rental pool or sold or transferred their units.

3

that the resolution is prohibited by § 82.102(c) because (1) there is no correlation between the twenty-percent fee and any increased costs incurred by Pelican; (2) the resolution was decided on a whim; (3) the twenty-percent fee is only imposed against the self-renters as opposed to all unit owners; (4) the resolution adds restrictive covenants to the self-renters' use of their property contrary to the Declaration, (5) all unit owners are to be charged their pro-rata share of common expenses; and (6) any changes to the Declaration required written consent of all unit owners.

Pelican moved for summary judgment on the grounds that the resolution was enforceable and did not conflict with the Declaration: "the resolution was not arbitrary, capricious, or discriminatory because it was specifically considered by and overwhelmingly voted for by unit owners at an annual meeting where every owner was allowed to speak." Pelican also argued that the self-renters "were not singled out for an obligation to pay for a fee because the [rental-pool owners] had for many years been paying [their] portion of rental income toward rental activity expenses" while the self-renters did not. Pelican also sought injunctive relief requiring the self-renters to comply with the resolution.

On January 24, 2019, the trial court denied the self-renters' motion and issued several findings of fact and conclusions of law.[3] It also granted Pelican's partial motion for summary judgment as to the self-renters' claims for breach of contract and injunctive

---

[3] We note that findings of fact and conclusions of law "have no place" in a summary judgment proceeding because in order for a summary judgment to be rendered, there cannot be a "genuine issue as to any material fact," and the legal grounds are limited to those stated in the motion and response. *IKB Indus. Ltd. v. Pro–Line Corp.*, 938 S.W.2d 440, 441 (Tex. 1997) (citing *Linwood v. NCNB Texas*, 885 S.W.2d 102, 103 (Tex. 1994)). Therefore, we will not consider the trial court's findings in our analysis.

4

relief. On March 27, 2019, Pelican moved for summary judgment on the parties' requests for declarations, asserting the defenses of waiver, estoppel, ratification, and the presumption of reasonableness as to the Board's decisions under the property code. The trial court granted Pelican's motion for summary judgment and ordered the self-renters to pay attorney's fees. This appeal followed.

## II. SUMMARY JUDGMENT

By their first issue, the self-renters argue that summary judgment in favor of Pelican was improper because the Board adopted a resolution which deviated from the cost-sharing regime set forth in the Declaration. They argue that any changes to the Declaration required unanimity.[4]

### A. Standard of Review

We review the trial court's ruling on a motion for summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). In the case of a traditional summary judgment, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

---

[4] On appeal, the self-renters do not challenge the trial court's declaration regarding the resolution's prohibition against future self-rentals. Therefore, we do not address this in our analysis. Moreover, they do not argue that Pelican did not meet its summary judgment burden by establishing that no genuine issue of material fact exists and that Pelican is not entitled to judgment as a matter of law. Instead, they pray that we reverse the trial court's summary judgment and render summary judgment in their favor stating that the resolution is void.

Here, Pelican and the self-renters filed cross-motions for summary judgment. When competing summary judgment motions are filed, "each party bears the burden of establishing that it is entitled to judgment as a matter of law." *City of Garland v. Dall. Morning News*, 22 S.W.3d 351, 356 (Tex. 2000). In that instance, if "the trial court grants one motion and denies the other, the reviewing court should determine all questions presented" and "render the judgment that the trial court should have rendered." *Id.*; *see also Comm'rs Court of Titus Cnty. v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997) (requiring appellate courts to "review the summary judgment evidence presented by both sides" when making this inquiry); *Guynes v. Galveston County*, 861 S.W.2d 861, 862 (Tex. 1993) (reviewing cross-motions for summary judgment where the facts were undisputed by "determining all legal questions presented").

## B.  Restrictive Covenants

Restrictive covenants are treated as valid contracts, and we construe them in accordance with general rules of contract construction. *Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 279 (Tex. 2018); *see* TEX. PROP. CODE ANN. § 202.001(4) (defining restrictive covenant). "Whether a restrictive covenant is ambiguous is a question of law for the court to decide by looking at 'the covenants as a whole in light of the circumstances present when the parties entered the agreement.'" *Tarr*, 556 S.W.3d at 279 (quoting *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998)). Covenants are ambiguous when they are susceptible to more than one reasonable interpretation, and they are unambiguous when they can be given a definite or certain legal meaning. *Id.* Mere disagreement over the interpretation of a restrictive covenant does not render it

6

ambiguous. *Id.*

When construing a restrictive covenant, our primary concern is to give effect to the objective intent of the drafters as expressed by the language used. *Id.* at 280. We examine the restrictive covenant as a whole and give the words their common meaning at the time it was written. *Id.* "A restrictive covenant shall be liberally construed to give effect to its purposes and intent." TEX. PROP. CODE ANN. § 202.003(a). However, a court should not construe a covenant to nullify or enlarge a restrictive covenant: "[n]o construction, no matter how liberal, can construe a property restriction into existence when the covenant is silent as to that limitation." *Tarr*, 556 S.W.3d at 285.

## C. Gulf Shores

The self-renters argue that Pelican cannot deviate from the cost-sharing regime set forth in the Declaration and implement an entirely new and separate regime without a duly recorded amendment to the Declaration and unanimous agreement from all owners. Pelican relies on our previous opinion *Gulf Shores Council of Co-Owners, Inc. v. Raul Cantu No. 3 Family Ltd. P'ship*, 985 S.W.2d 667 (Tex. App.—Corpus Christi–Edinburg 1999, pet. denied), for the proposition that the general authorizations in the Declaration justify the imposition of the twenty-percent fee on the self-renters.

In *Gulf Shores*, the Cantus purchased condominium units and placed them in Gulf Shores's rental pool. *Id.* Like Pelican's rental pool, Gulf Shores managed and rented out units in the rental pool and charged a forty-percent rental fee for expenses incidental to renting. *Id.* As members of the rental pool, the Cantus contributed to this fee. *Id.* Thirteen years later, the Cantus withdrew their units from the pool and self-rented their units. *Id.*

7

Thereafter, Gulf Shores's board enacted a policy regulating the renting of units outside the rental pool and levied a twenty percent fee on those units as the board did here. *See id*. These fees were intended to cover the additional expenses caused by renters. *Id*. Apart from the fees charged by the rental pool or on units rented outside the pool, Gulf Shores's Declaration and bylaws required each unit owner to pay a pro-rata share of common expenses. *Id*. The Cantus paid this amount, but they refused to pay the fees levied against them for renting outside the rental pool arguing the fees were arbitrary and capricious as the self-renters argue here. *Id*. at 673.

This Court concluded that, under Gulf Shores's declaration, Gulf Shores could levy fees on self-renters who rented their units outside the rental pool "to cover the additional expenses caused by renters." *Id*. at 669. The declaration also authorized Gulf Shores to assess the self-renters for their pro-rata share of the common expenses "and otherwise as herein provided." *Id*. at 671. We concluded that the bylaws authorized Gulf Shores to "exercise powers necessary or proper to obtain the object of the corporation," and to levy fees against owners renting outside the rental pool, so long as the fees were "reasonably necessary to achieve the purpose of creating a uniform plan for development and operation of the condominium project." *Id*.

In *Gulf Shores*, the Cantus made a similar argument as made by the self-renters in this appeal. *See id*. We note that the self-renters do not address *Gulf Shores* or its applicability to the issue before us. Instead, by one single sentence, the self-renters merely state *Gulf Shores* is distinguishable because "the trial court entered judgment on a jury verdict." We find the self-renters' distinction regarding the applicability of *Gulf*

8

*Shores* unpersuasive. The argument before us in this cause is the same as it was in *Gulf Shores*; therefore, our analysis is the same.

**D.    Discussion**

**1.    Declaration**

Section 10(i) of the Declaration states:

> All owners of apartment units . . . are bound and obligated to contribute monthly or as otherwise periodically assessed by the Council of Co-owners or by the board of administration, when authorized to do so by the By-laws of this project or by resolution of said Council of Co-owners, their pro-rata share, in the percentages above fixed and set out for each apartment unit, of the expenses of administration, upkeep, maintenance and repair of the general common elements, as any and all such common elements, are described and defined in this Declaration, and of any *other valid expense or charge assessed pursuant to authority given by [the Texas Uniform Condominium Act] or this Declaration or said By-Laws* . . . . [emphasis added].

Thus, the Declaration binds and obligates the unit owners to contribute their pro-rata share along with "any other valid expense or charge assessed pursuant to authority given by" the Declaration or the bylaws. *See id.* at 669 (finding that the phrase "as otherwise herein provided" in the declaration gave the board the power to assess fees on the self-renters aside from their pro-rata share).

Like the bylaws in *Gulf Shores*, article IV.2 granted the Board similar broad powers: "The Board shall have the powers and duties necessary for management and administration of [Pelican] and may do all such acts and things as are not prohibited by law, by these By-Laws, or by the Declaration." Article VII in the bylaws further provides that unit owners "are bound and obligated to contribute . . . as otherwise periodically assessed by the board when authorized to do so by the board by these By-Laws or by

9

resolution of the Owners . . . toward any other expense lawfully agreed upon by the board." Thus, like the declaration and bylaws in *Gulf Shores*, the Declaration here gives Pelican the power to assess the unit owners for "any other valid expense or charge assessed pursuant to authority given by" the bylaws, and those bylaws gave the Board the power to exercise powers necessary for management and administration. *See id.*

Consequently, we conclude that Pelican had the authority to levy fees against the self-renters renting outside the rental-pool, "assuming the prohibition and fees were reasonably necessary to achieve the purpose of creating a uniform plan for development and operation of the condominium project." *See id.* at 670 ("A condominium association has considerable discretion to determine the necessary expenses for the operation of the condominium project and to assess the owners' pro rata share of the common expense."); *Martinez v. Hous. McLane Co.*, 414 S.W.3d 219, 222–23 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (observing stare decisis promotes efficiency, fairness, and legitimacy in judicial system and allows parties to justifiably rely on our past opinions, promoting predictability in law); *see also Haddad v. Marroquin*, Nos. 13-07-00014-CV & 13-07-00109-CV, 2007 WL 2429183, at *6 (Tex. App.—Corpus Christi–Edinburg Aug. 29, 2007, pet. denied) (mem. op.) (observing that "we are compelled to follow our own precedent"). We overrule the self-renters' first issue.

### 2. Board of Directors

As a sub-issue, the self-renters generally assert that when the Board adopted the resolution, its composition was not in compliance with the bylaws; therefore, its actions in adopting the resolution were void. Pelican responds that waiver, estoppel, and ratification

render the self-renters' claims meritless.

Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996). Restrictive covenants, like other contract provisions, may be waived. *Sharpstown Civic Ass'n, Inc. v. Pickett*, 679 S.W.2d 956, 958 (Tex. 1984); *Cowling v. Colligan*, 312 S.W.2d 943, 945 (Tex. 1958) ("A court may refuse to enforce a restrictive covenant because of the acquiescence of the lot owners in such substantial violations within the restricted area as to amount to an abandonment of the covenant or a waiver of the right to enforce it."); *see also Friedman v. Rozzlle*, No. 13-12-00779-CV, 2013 WL 6175318, at *10 (Tex. App.—Corpus Christi–Edinburg Nov. 21, 2013, pet. denied) (mem. op.). To establish abandonment, a party must prove that the violations are so great as to lead the mind of the average man reasonably to conclude that the restrictions in question have been abandoned. *Tanglewood Homes Ass'n, Inc. v. Henke*, 728 S.W.2d 39, 43 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). We consider the number, nature, and severity of the then-existing violations, any prior acts of enforcement of the restriction, and whether it is still possible to realize to a substantial degree the benefits intended through the covenant. *Id.* at 43–44.

Prior to July 2016, Pelican's bylaws required the Board be comprised of six persons—with at least two, but not more than three, being rental-pool owners. In July 2016, at a special meeting, the Board voted to amend the bylaws without a limit on the rental-pool owner membership and to limit the members to a total of five. It is undisputed that more than three rental-pool owners have sat on the Board for over thirty years. In its

11

summary judgment evidence, Pelican provided its Board president's affidavit wherein he averred that the Board consisted of more than three rental-pool owners for at least thirty-three years—if not longer. During this time, Bargnesi, Kirking, and Noche Verde, LLC owned units without lodging a single complaint about the Board's composition while more than three self-renters contributed to the Board for ongoing decades as to reasonably lead to the conclusion that the restriction had been abandoned or waived. *See Pebble Beach Prop. Owners' Ass'n v. Sherer*, 2 S.W.3d 283, 290 (Tex. App.—San Antonio 1999, pet. denied). The record does not reveal any attempt by the self-renters to complain about the Board's composition until after the January 30, 2016 meeting wherein the issues related to the resolution ensued. *See Tenneco Inc.*, 925 S.W.2d at 643 (stating that waiver may be proved by inaction for a period long enough to show an intention to yield a known right). We conclude that under this summary judgment evidence, the record establishes that the self-renters failed to attempt to enforce the restriction they now seeks to enforce and which the Board eliminated in 2016. *See Tanglewood*, 728 S.W.2d at 44. Accordingly, we conclude that the self-renters have waived or abandoned the provision that forms the basis of their complaint. We overrule the self-renters' sub-issue.

### 3. Fees

By their second issue, the self-renters argue that the fees are arbitrary, capricious, and discriminatory because they only apply to the self-renters, and there is no correlation between the fee and any cost incurred by Pelican. However, we previously rejected this argument in *Gulf Shores.* 985 S.W.2d at 673. Like the self-renters here, the Cantus similarly argued that the twenty-percent fee was arbitrary because it was "just pulled out

of the air" and discriminatory because it "applied only to [the Cantus]." *Id*. We found there was "no evidence to support [the Cantus] opinion that the amount of the fee was chosen arbitrarily, but rather, that the Council deliberated at length on the subject." *Id*. We further found that proof that the charges applied only to the Cantus was no evidence of discrimination—their units were the only ones rented outside of the rental pool. *Id*.

"For the assessment of the fee or the later prohibition against the use of outside rental agents to be arbitrary, capricious, or discriminatory, there must be evidence that the governing board acted without a reason related to the sound governance of the entire condominium project." *Id.* at 673. Like the Cantus, the self-renters have not provided evidence that the Board acted without a reason related to the sound governance of the entire condominium project. Conversely, Pelican provided evidence that the Board "deliberated at length on the subject" as unit owners expressed frustration, that for over thirty years, self-renters did not pay fees associated with leasing their units as those in the rental-pool.[5] Thus, there is no evidence that the Board acted without a reason related to the sound governance of the project. As we articulated in *Gulf Shores*, we conclude the twenty-percent fee imposed against the self-renters is not arbitrary or discriminatory. Accordingly, Pelican met its burden to establish that no genuine issue of material fact exists, and it is entitled to judgment as a matter of law. *Id*. We overrule the self-renters' second issue.

---

[5] In his affidavit, the Board's president stated that the twenty-percent fee was imposed to defray the costs of "extra water, trash, night/weekend salaries, pool, and security expenses."

### III. CONCLUSION

We affirm the judgment of the trial court.

JAIME TIJERINA
Justice

Delivered and filed on the
12th day of August, 2021.